FILED
Feb 26, 2021
01:54 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MURFREESBORO

| | | |
|---|---|---|
| **BOB WALLS,** | ) | **Docket No.: 2019-05-0371** |
| **Employee,** | ) | |
| **v.** | ) | |
| | ) | |
| **UNITED TECHNOLOGIES CORP.,** | ) | **State File No.: 57369-2018** |
| **Employer,** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **NEW HAMPSHIRE INS. CO.,** | ) | **Judge Dale Tipps** |
| **Carrier.** | ) | |

---

## ORDER GRANTING MEDICAL BENEFITS

---

This case came before the Court on February 24, 2021, for a Hearing under Tennessee Code Annotated section 50-6-204(g)(2) (2020). The central legal issue is whether Mr. Walls is entitled to left-hip surgery recommended by his authorized treating doctors. Mr. Walls also seeks attorney fees. For the reasons below, the Court holds that Mr. Walls established entitlement to the requested medical benefits. However, he is not entitled to attorney fees.

### History of Claim

Mr. Walls suffered work-related injuries to his left shoulder and left hip on July 25, 2018. United Technologies Corporation (UTC) provided benefits, including medical treatment with authorized treating physician Dr. Jeffrey Adams. In November 2018, Dr. Adams placed Mr. Walls at maximum medical improvement and assigned a permanent impairment rating. The parties appeared before the Court for a settlement approval in March 2019.

In addition to payment of permanent disability benefits, the settlement agreement provided:

1

> Employer agrees to pay for reasonable and necessary authorized future medical expenses which are directly related to the subject injury, pursuant to Tenn. Code Ann. 50-6-204. Dr. Adams shall be the designated authorized treating physician for future care[.]

The Court approved the settlement after determining that the proposed terms secured to Mr. Walls substantially the benefits to which he was entitled.

After the settlement, Mr. Walls sought additional treatment for his hip. An MRI in September showed a tear of the gluteus medius tendon, and Dr. Adams recommended surgical repair. UTC submitted the recommendation to utilization review (UR), where it was reviewed by Dr. Reese Polesky. Dr. Polesky recommended non-certification of the request because:

> As per the guidelines, predictors for this type of surgery include abduction power of a grade less than 4 and gait dysfunction. The evaluation of October 24, 2019 did not establish the grade or laterality of the noted weakness[.] Additionally, gait dysfunction was not noted. Furthermore, this patient is a 69-year-old individual with advanced osteoarthritis noted in the bilateral hips. This would render him a suboptimal candidate for surgery.

Mr. Walls appealed the non-certification to the Medical Director, who upheld the denial.

In January 2020, Mr. Walls returned to Dr. Adams for continuing symptoms of pain in the left hip. Dr. Adams wrote:

> I have once again re-reviewed x-rays as well as the MRI of his left hip. Once again, he has very minimal degenerative changes of the hip. His MRI showed a tear of this gluteus medius tendon, which is consistent with his exam findings. He has not responded to two Cortisone injections or a course of formal physical therapy. It has been over a year since his injury and his pain is worsening. I have once again recommended a left hip gluteus medius repair. However, his work comp as well as the TN Department of Labor has denied this even with an appeal letter from me. Therefore, I have recommended a second opinion[.]

Dr. William Kurtz provided the requested second opinion in April. After examining Mr. Walls and reviewing the MRI, he noted 4/5 abductor strength and a gait disruption. Dr. Kurtz concurred in Dr. Adams's diagnosis and added: "He did not have any arthritis in that left hip. MRI report did say moderate arthritis, but he had no subchondral edema and no signs of arthritis to speak of in that left hip." Dr. Kurtz felt a tendon repair was

reasonable, and he discussed the procedure with Mr. Walls, including that he would need to be non-weightbearing for two or three months after the operation.

Mr. Walls returned to Dr. Kurtz in May, and he recommended surgery.[1]  UTC submitted the recommendation to UR, and Dr. Polesky again recommended non-certification.  He explained:

> In the most recent report, the provider states that the MRI does not really show any hip arthritis.  However, this is not consistent with the radiologist's impression in the 9/19/19 left hip MRI report.  The MRI report states that there is advanced arthritis in the bilateral hip joints.  The provider should submit a current x-ray report from a radiologist to clarify this issue.  Given the patient's age, and with the MRI report describing advanced arthritis in the bilateral hip joints, the patient would be a suboptimal candidate for the requested procedure.

This non-certification was also appealed, and the Medical Director upheld the denial, stating: "It is suggested that since the fact in dispute is the presence or absence of advance[d] osteoarthritis in the left hip, that a hospital or imaging center plain weight bearing x-ray of the left hip should be obtained and the file should then be resubmitted to the adjuster."[2]

Dr. Kurtz gave a deposition a few months after the second UR denial.  He repeated the findings and recommendations in his office notes, confirmed that he reviewed Mr. Walls's MRI, and testified he found no significant arthritis.  He continued:

> He had great range of motion in his hip, which was – you know, that's the main indicator of arthritis. . . That's the classic provocative symptom of hip arthritis, and he did not have that.  And therefore, I do not think that he had hip arthritis and definitely not any symptomatic hip arthritis.

Dr. Kurtz disagreed with the second non-certification and said: "I don't think his age has anything to do with it.  I mean his MRI findings were not significant nor his physical exam findings significant for arthritis."

Dr. Kurtz also confirmed that "this is a tough surgery to have."  He acknowledged that the outcome is not as predictable as some other procedures and requires a long recovery

---

[1] Although Dr. Kurtz's first treatment note states that he was seeing Mr. Walls for a second opinion, Mr. Walls's unrefuted testimony established that UTC asked him to treat with Dr. Kurtz because of his expertise in hip injuries.

[2] The first UR appeal letter was signed by Dr. Robert Snyder, the Bureau's Medical Director.  The second appeal letter was also signed by Dr. James Talmadge, Assistant Medical Director.

period but added: "You've got to fix the abductor tendon or he's always going to be in pain and he's always going to limp."

## Findings of Fact and Conclusions of Law

*Medical Treatment*

Tennessee Code Annotated section 50-6-204(g)(2) provides authority for the Court to order specific medical benefits under a settlement agreement. Although this section does not specify a burden of proof, Tennessee Code Annotated section 50-6-239(c)(6) provides, "at a hearing the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence." This includes the burden of showing the necessity of the requested medical treatment.

The Workers' Compensation Law gives an employer the right to submit medical treatment recommended by the authorized treating physician to UR for "evaluation of the necessity, appropriateness, efficiency and quality of medical care services[.]" Tenn. Code Ann. § 50-6-102(20). The parties agree that Dr. Adams and Dr. Kurtz are authorized physicians. So, under Tennessee Code Annotated section 50-6-204(a)(3)(H), their surgical recommendation is presumed medically necessary. Thus, the first question for the Court is the proof necessary for UTC to rebut this presumption.

The Appeals Board addressed this question in *Morgan v. Macy's*, 2016 TN Wrk. Comp. App. Bd. LEXIS 39 (Aug. 31, 2016). It gave two methods by which UTC might rebut the presumption of necessity of the proposed surgery. First, if the treating physician's recommended treatment does not "explicitly follow," or if it is not "reasonably derived," from the ODG guidelines, the employer need only rebut the authorized physician's recommendation by a preponderance of the evidence. *Id.* at *19. Second, if the employee does show that the authorized physician followed the ODG guidelines in recommending treatment, the employer must rebut the presumption of medical necessity by clear and convincing evidence. *Id.*

Dr. Polesky's report stated that the ODG "is silent regarding gluteus medius tendon repair," and the parties offered no proof as to whether the treating doctors' recommendation "explicitly follows the treatment guidelines" or "is reasonably derived therefrom." Therefore, UTC need only rebut the medical necessity of Dr. Adams's and Dr. Kurtz's recommendations by a preponderance of the evidence.

In this case, the primary evidence presented for rebuttal is the conflicting opinion of Dr. Polesky. When "faced . . . with conflicting medical testimony," the Court must determine which expert opinion "should be accepted [and which opinion] contains the more probable explanation." *Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991). To do this, the Court should consider "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*,

4

803 S.W.2d 672, 676 (Tenn. 1991).  Further, it is reasonable to conclude that the physician "having the greater contact with [the injured worker] would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one."  *Id.* at 677.

The Court notes that Drs. Adams and Kurtz saw Mr. Walls on multiple occasions, and they examined his hip at each visit.  Based on their findings, they formulated an opinion that surgery was reasonable and necessary treatment.  Conversely, Dr. Polesky only reviewed medical records; he never examined Mr. Walls.  Similarly, it appears Dr. Polesky only reviewed the radiology report and did not view the actual MRI, while both authorized doctors reviewed and interpreted the MRI images themselves.

This last distinction is important because Dr. Polesky's primary objection to the surgery is based on the MRI report saying that Mr. Walls suffers from advanced arthritis in the hip.[3]  Because of this, Dr. Polesky felt Mr. Walls was not a surgical candidate.[4]  Drs. Adams and Kurtz, on the other hand, both reviewed the MRI images and stated that the MRI did not show significant arthritis.  Dr. Kurtz also testified that his physical examination and testing supported that conclusion.  After careful consideration of this difference in the information available to the doctors, as well as the other factors in *Orman*, the Court finds Dr. Polesky's opinions to be less persuasive than those of the authorized medical providers.

Regarding Dr. Talmage's appeal letter, the Court agrees with the doctor that the fact in dispute is the presence or absence of advanced osteoarthritis in the left hip.  Unlike the doctor, however, the Court cannot suggest or order an additional x-ray to try to resolve that dispute.  Instead, the Court is limited to evaluating the admitted evidence and determining whether it supports a finding that UTC overcame the presumption of reasonableness and necessity.  The fact that additional testing might provide relevant information is not evidence.  Instead, as noted above, the only evidence of advanced osteoarthritis before the Court is the MRI report, which is belied by Drs. Kurtz and Adams's interpretation of the MRI images and their physical examination of Mr. Walls.

Further, Tennessee law has long held that medical proof is not to be "read and evaluated in a vacuum" but, instead "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition."  *Thomas*, 812 S.W.2d at 283.  The Court finds Mr. Walls testified credibly regarding his physical condition and limitations.  He did not appear to exaggerate his

---

[3] Although the parties presented the issue as a question involving two UR denials, the Court questions whether the first denial, which presumably became irrelevant after the treating doctor's second surgical recommendation, is properly before the Court.  However, the Court need not decide that question because Dr. Polesky's first non-certification was based on the grounds that the surgical recommendation did not establish the grade or laterality of Mr. Walls's hip weakness or note any gait dysfunction.  Dr. Polesky noted that those deficiencies were corrected in Dr. Adams's later surgical request, and he focused instead on the issue of arthritis.

[4] Dr. Polesky also referenced Mr. Walls's age, but because he said he would reconsider his decision if additional x-rays were taken, it appears Mr. Wall's age was not a primary factor in his non-certification.

complaints of pain, his demeanor was consistent with one who had endured pain for some time, and his need for relief was believable. In the context of the authorized doctors' recommendations, the Court finds his lay testimony supports the necessity of the recommended surgery.

UTC argued that Dr. Polesky was a disinterested and board-certified doctor whose review and determination adhered to the requirements of the UR program.[5] It contended that it complied with its obligations under the UR program and maintained that: "Employers and insurance carriers must be allowed to make these determinations based upon a Utilization Review decision or the entire Utilization Review program would be unnecessary." UTC suggested that this case "expressly invites [the] Court to substitute its own judgment and own opinions in the place of reasoned medical authority and opinions[.]" It argued that the issue of medical necessity:

> has already been decided by Dr. Snyder and Dr. Talmage in their **medical** roles as the Medical Director and Assistant Medical Director, and Employer/Carrier would respectfully request that this Honorable Court not substitute its own judgment and own opinions for those of the State of Tennessee's Medical Director and Assistant Medical Director regarding **medical** necessity.

(Emphasis in original).

UTC misapprehends the role of the Court in this situation. It does not substitute its judgment for that of the Medical Director or any of the other qualified physicians in this case. Rather, the Court must merely determine whether UTC has met its burden of proving, by a preponderance of the evidence, that the statutory presumption of necessity has been overcome. The deference to the superior expert knowledge of the medical professionals urged by UTC is implicit in this process, but the Court cannot allow that deference to interfere with its duty to evaluate all the medical opinions using the criteria in *Morgan* and *Orman*.[6]

---

[5] Both parties argued that the other's doctors were biased, but neither party introduced any evidence to support those allegations.

[6] To the extent UTC's argument suggests the Court does not have or should not exercise jurisdiction in this matter, the Court notes that it has "original and exclusive jurisdiction over all contested claims for workers' compensation benefits when the date of the alleged injury is on or after July 1, 2014." Tenn. Code Ann. § 50-6-237. Further, the Court has statutory authority under Tennessee Code Annotated section 50-6-238(a)(3) "to hear and determine claims for compensation, to approve settlements of claims for compensation, to conduct hearings, and to *make orders, decisions, and determinations*." (Emphasis added). Finally, Tennessee Code Annotated section 50-6-204(a)(3)(I) establishes the evidentiary standard for overcoming a treating physician's opinion regarding medical necessity. If the Court had no authority to hear issues of medical necessity, then a party would have no avenue to argue this evidentiary issue, and section 50-6-204(a)(3)(I) would be made meaningless.

In making its finding on the issue of medical necessity, the Court recognizes its inability to formulate its own medical conclusions. Instead, it only considered the conflicting evidence properly admitted into the record, namely, the findings and opinions of the physicians. After careful analysis, the Court holds UTC has not rebutted the presumption of medical necessity attached to Dr. Adams's and Dr. Kurtz's recommended surgery by a preponderance of the evidence.

*Attorney Fees*

Tennessee Code Annotated section 50-6-226(d)(1)(A) empowers the Court to award reasonable attorney fees and costs when an employer "fails to furnish appropriate medical, surgical . . . treatment or care . . . to an employee provided for in a settlement[.]" In this case, there is no dispute that UTC failed to furnish medical treatment provided for in a settlement. The question for the Court, therefore, is whether attorney fees should be awarded when the medical treatment at issue was denied by UR. The Court finds that they should not.

As noted above, employers have the right to submit medical treatment recommended by the authorized treating physician to UR for evaluation of the necessity, appropriateness, efficiency, and quality of medical care services. As required by Tennessee Code Annotated section 50-6-124, the Bureau has established the process for doing so by promulgating several rules. *See* Tennessee Compilation Rules and Regulations, Chapter 0800-02-06. UTC properly followed these procedures and made its decision to deny Mr. Walls's surgery based on the recommendations of the UR reviewer and later Medical Director decisions.

Even though the Court has now found the UR records insufficient to overcome the presumption of necessity, UTC's actions were reasonable at the time and consistent with the statute. It is unrealistic to expect UTC to authorize the recommended surgery after UR twice noncertified it as unnecessary, and it would be incongruous and inequitable to sanction UTC for not doing so. The Court, therefore, cannot grant the request for attorney's fees.

**IT IS, THEREFORE, ORDERED** as follows:

1. UTC or its workers' compensation carrier shall provide Ms. Walls reasonable and necessary future medical benefits under Tennessee Code Annotated section 50-6-204(a)(1)(A), including the left hip gluteus medius repair, with Dr. Kurtz as the authorized physician.

2. UTC shall pay costs of $150 to the Court Clerk within five business days of this order becoming final.

3. UTC shall file a Statistical Data Form (SD-2) with the Court Clerk within five business days of the date this order becomes final.

4. Unless appealed, this order shall become final thirty days after issuance.

**ENTERED February 26, 2021.**

_____
**DALE TIPPS, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. UTC's Index of Medical Records
2. Mr. Walls's Amended Notice of Filing Medical Records
3. Deposition of Dr. William Kurtz
4. Mr. Walls's Notice of Filing Proposed Exhibits
5. March 5, 2019 Settlement Agreement and Order

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Employee's Witness and Exhibit List
4. Employee's Pre-Trial Statement
5. Employer and Carrier's Pre-Hearing Statement and Trial Brief

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a copy of this Order was sent as indicated on February 26, 2021.

| Name | Certified Mail | Via Email | Service Sent To |
|------|---------------|-----------|-----------------|
| D. Russell Thomas, Employee's Attorney | | X | russthomas@thethomaslawfirm.com claudia@thethomaslawfirm.com |
| Kyle Cannon, Employer's Attorney | | X | kcannon@gwtclaw.com |

8

_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov



<u>Compensation Hearing Order Right to Appeal</u>:

        If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*